Good morning. May it please the court. My name is Scott Ballinger. I'm here for the appellate, the Union Pacific Railroad. We have a lot of rather technical issues to discuss. If I may, I'd like to start a little bit with the practical big picture. I was interested particularly in the amicus brief by the Chamber of Commerce that said the whole future of the capitalistic system depends on your client winning. Is that true? This is an important case, Your Honor. Well, we just heard in the other case it was the most important case we'd ever hear. Is this as important as the other case or more important? I believe it's more important, Your Honor. And is the capitalistic system really going to rise or fall on the outcome? Well, no, Your Honor, but the fortunes of a lot of farmers and independent business people and public utilities may. So if I may, this case is about the statutes that authorize the construction of the original transcontinental railroads. And commercial development along the lines of these railroads was in large measure the whole point of those statutes. To that end, very early on, the Supreme Court held that the pre-1871 statutes granted these rights of way to the railroads in fee, subject only to a possibility of reverter in the United States. And in reliance on those holdings, the railroads have always leased portions of these rights of way to private commercial enterprises. Well, I try to pay attention like hopefully a good judge would, and I think I know a little bit about this. But you come down to whether or not there's a railroad purpose to be served here and whether it's post-1875 or otherwise. You can't avoid the issue of whether or not there's a railroad purpose here that's to be served. I don't believe that's right, Your Honor, because for the pre-1871 statutes, which is the most important issue in this case, the Supreme Court has held for 150 years that these were granted in limited fee. I agree with that. But post-1875, when the easement was granted, the railroad purpose comes into play then, right? Yes, Your Honor. Okay. So we have to really focus one way or the other on railroad purpose because I don't know how many of these pipelines came before 1875, how many came after 1875, but it seems to me that there's a dichotomy between pre- and post-1875. But post-1875 gets us to the railroad purpose issue, and the district court said there was no railroad purpose here. Do I read that correctly? That's right, Your Honor, for the post-1875. But both issues are presented, and we think it's very, very important. But if we decide that the pipeline is for railroad purpose, do we need to sort out the distinction between the 1875 act and all the prior acts? Yes, Your Honor, because it's very important to – Well, we can just assume that the pre-1875 acts is the same as the 1875 act in requiring a railroad purpose, and the pipeline serves a railroad purpose. Your Honor, I think it would be a grave mistake to make that assumption. The Supreme Court has held the opposite for 150 years, and it really, really matters. Maybe not so much for this case, but for all of the next 100 cases that are going to be presented. The pre-1871 statutes granted this land in fee, and in reliance on that holding by the Supreme Court, the railroads have leased this property for all kinds of uses for 150 years. I don't know on this record how much of the pipeline predates 1875, how much of it post-dates 1875. So it's kind of hypothetical to some extent, I guess. I take it on faith that we have a little bit of this and a little bit of that if this was factually to be explored. But ultimately, I agree with Judge Winder that you have to come down to whether or not there's a railroad purpose to be served here, at least in terms of post-1875 pipelines. So we have to deal with that issue. We do have to deal with that issue, but please let's not decide – You want us to go back and decide the pre-1871 statute? Is it because the state courts already ruled? You would like a different interpretation. That issue was certified for review. Let me address it from a practical standpoint, because there was a collateral estoppel question briefed and raised below. And as I read the district court's order on ER-12, the district court order said, in a subsequent order, the court will discuss whether Union Pacific's counterclaims are barred by issue preclusion collateral estoppel as well. But what happened to that? That just kind of fell off, and the collateral estoppel issue has never been reached? There has been no order on that. The only order that has come on that is in the parallel Arizona litigation, where Judge Campbell joined issue with that and held conclusively that Union Pacific is not bound by collateral estoppel on these issues. That question is not before this court. It has not been resolved in this case. It hasn't been addressed in the certified order. And this court has held several times that the letter and the spirit of 1292B do not permit the court of appeals in a 1292B appeal to reach beyond the certified questions. And here we have two certified questions. And I'm not ducking Your Honor's question about the — You want to argue that this is a railroad purpose that's being served, don't you? Absolutely, Your Honor. Don't you think that that's the most important part of your argument? I do not, Your Honor. I'm happy to turn to it if Your Honor wants to talk about it. You don't have to deal with railroad purpose at all, you're telling me, in this case? No, Your Honor. We have to deal with the railroad purpose issue. You don't have to, but you'd like us to because you'd like a ruling contrary to what the California court of appeal held. Absolutely, Your Honor, because that California court of appeal ruling is incorrect and it's causing enormous mischief. Can I address the practical issue here? The pre-1871 statutes granted 400-foot rights of way. They're broader than a football field. And the railroad in most instances only had to fence out to 50 feet because that's what they needed for safety. Thousands of miles along these pre-1871 rights of way are leased to farmers and ranchers so that they can graze their cows and plant their crops right up to the fence so that the railroad doesn't have to worry about adverse possession. And that is someday maybe we would have to argue about whether that's a railroad purpose or not, but we don't have to if the court gets the law right and holds that the pre-1871 rights of way are fees. So where does that leave us? We have to send it back to find out what predates 1875, what postdates 1875? No, Your Honor. This case is here on the 1292B appeal in which two certified questions of law have to be answered. And the first is what is the nature of the railroad's right of way pre-1871, and the second is whether Union Pacific has a plausible claim to a railroad purpose. Now, if you'd like, I will turn to that question. I'm not trying to be difficult. But as a practical matter, we have – I tend to agree with you. There's a difference between pre- and post-1875. I don't know what my colleagues will say, but I tend to agree with you. One is a fee. The other one is an easement. I understand the mineral issue and all of that. But I just think that I don't know how much of the pipeline predates 1875 or postdates it. It seems like you're looking for something that's more theoretical than real. Maybe yes, maybe no. I have no clue. But if it is a railroad purpose and you seem to shy away from that, you're not comfortable with that argument, apparently. We're extremely comfortable with that argument, Your Honor. We think we obviously win it. Initially, this was part of your reason to amend. Yes, Your Honor. Why didn't you do that initially? Why is it that you left that for an amendment? Well, we just didn't think it was necessary to spell out all of the details in our original complaint. But the court below held very clearly that he was not dismissing on any kind of pleading failure. His view was that even after we alleged that this pipeline transports millions of gallons a year of fuel to dedicated railroad terminals for use in locomotives, saving the railroad millions of dollars a year, that that still wasn't good enough. And obviously that's at least plausibly good enough to establish a railroad purpose, Your Honor. This is the exact equivalent of the water pipelines that railroads built in the 19th century to bring water from streams and lakes to water stations along the railroad so that steam locomotives would have a source of water in order to drive their pistons. And now the railroad runs on diesel fuel. This pipeline was built by an affiliate of the railroad in the 1950s, and it transports millions of gallons a year of fuel that is used by the railroad. And the only argument— How do we know that? Because that is the allegation in Union Pacific's proposed amended complaint, which we were denied leave to amend only on futility grounds. I understand that, but I guess I'm puzzled as to why you didn't say in your original complaint that this was a railroad purpose, and why you just seemed to concede initially that it was not a railroad purpose. We absolutely didn't concede anything, Your Honor. We filed a counterclaim complaint asking for a declaration that we were allowed to operate this pipeline or authorize this pipeline, and they came back— Was the theory under the incidental use doctrine? Originally, when you contemplated and drafted the counterclaim? Well, Your Honor, for the pre-1871 stretches of this pipeline, it's that we own the land in fee. For all of the property that we have bought in fee, it's that we own the land in fee. For any stretch that is governed by the 1875 Act, yes, the original theory has always been that this would be authorized by the incidental use doctrine. And again, under this Court's precedence, we were plainly entitled to leave to amend if there was any deficiency in that initial complaint, and the district court didn't say otherwise. The district court said, I'm not deciding on the basis of any pleading deficiency by Union Pacific, purely on the basis that those proposed amended allegations would still be futile. So if you go back, you want to have a factual determination as to whether or not the pipeline is actually being used for a railroad purpose? Yes, that's all we want, Your Honor. And what will you offer? I mean, I assume that some of it is. I have no idea. Your Honor, we will prove with evidence that we use this pipeline to transport millions of gallons of fuel a year that we own, that we have purchased from refineries to our own fueling facilities for use in our own railroads. To run the railroads. Yeah, absolutely. That's going to be an easy burden to prove, you think, to sustain? Yes. What about sorting out what's covered under the pre-1871 Act versus the 1875 Act? Well, Your Honor, there's been no discovery in this case yet. It was terminated on a motion to dismiss our declaratory counterclaims. So eventually, yes, we will have discovery into what each portion of the relevant line is. On remand, that you cannot factory establish that the pipeline was being used for railroad purposes, let's assume that to be the case. You then would have to cut under the 1875 statute, which is not dependent upon railroad purposes, according to your theory, to see how many pipelines were laid prior to 1875. Is that what you're talking about? If somehow we were unable to establish a railroad purpose, then for those portions of the line that turned out to be 1875 Act lines, then we'll have to figure out what that means. And the plaintiffs have a trespass claim. Just a curious fellow from Brooklyn. Sure. But do you have any idea how many of these pipelines were laid before 1875 under the prior Act? I don't know, Your Honor. We have not had discovery on that issue, and I don't know the answer. But I do know that there are thousands of miles of the pre-1871 rights-of-way, the fee rights-of-way, and that issue is incredibly important. The Santa Fe Pacific Pipelines case got it wrong, and it threatens the viability of not just thousands of leases to individual farmers and ranchers, but lots of commercial enterprises that are located in these rights-of-way, utility facilities, public streets and highways are located in the outer reaches of these rights-of-way. I suppose if you, given the age of some of these lines, I suppose that might be one practical reason for us to reach the question as to the 1871, the pre-1871 Acts, because if we went back and you couldn't prove a railroad purpose, then you'd want to at least rescue as much of the tracks as you can under the pre-1871 Acts. Well, I think that it would be unwise to try and prejudge all of the cases that may arise. There will be a lot of different fact patterns. But I think it should tell this Court something, that you have amicus briefs not just from the Chamber of Commerce, but from the United States of America, saying that this is a big deal and that the Court should resolve both issues and that it should rule in the railroad's favor on both issues. Let me ask you, the ruling you're seeking is that under the original, before the statute, that you have everything except the mineral rights. It's well settled that the pre-1871 statutes granted a limited fee, which is an absolute present grant of everything but the mineral rights, subject to a reversion in the United States if the railroad abandons the line. And then you want a ruling that the post-1871, or whatever it was, statute is subject to the incidental use doctrine. Yes, Your Honor. We want a ruling that it is at least plausible that the Union Pacific could establish a right, in this case, to operate this pipeline under that doctrine. The incidental use doctrine. Yes. And then that would go back to the District Court to determine how the incidental use doctrine applies to the various properties. Yes. But one more thing, Your Honor. The only reason that the District Court doubted that this pipeline served a railroad purpose, I believe, is that the District Court made the same mistake that the State Court made of thinking that a pipeline that also serves other commercial customers automatically can't have a railroad purpose as a matter of law. And this Court should say that's wrong. If, for example, in the 19th— The Supreme Court has said that, I believe, as well. That that's not correct. Yeah, absolutely, in the Grand Trunk case and many others. In the 19th century, if the railroad built a water line to bring water to the railroad line and then had surplus water and wanted to sell it to local communities or local farmers, Congress would have cheered. There's nothing about the fact that a railroad infrastructure also benefits other people that makes it not serve a railroad purpose. Would there be a de minimis standard established here in terms of the amount of pipelines that are being used for railroad purposes? I mean, conceptually. Yeah. Or would any use, even if it was one gallon? I think, Your Honor, that it would definitely be open to a court if it appeared that the railroad purpose for a project was completely insubstantial. That the court could say that and say that this is— Substantiality could be a standard we would establish, perhaps, in dealing with the incidental use doctrine. If it was completely insubstantial, then you would say that doesn't really serve a railroad purpose. That's not the quantity aspects of it, the quantitative aspects of it. I think that that issue is not going to be remotely presented in this case. We are going to prove millions of gallons a year of fuel transported that we purchased from distant refineries and paid to transport over this pipeline to use in our locomotives. There's nothing insubstantial about that. Well, at this point, we don't need to sort it out because we're just at the pleading stage. That's right. I suppose they'd have another 12b-6 motion for plausibility-type grounds if you don't plead sufficient facts that they think can survive such a motion. Well, I hope that this Court will say that the proposed amended complaint that we submitted is sufficient to get past 12b, and then we'll fight on summary judgment and at trial about— How much time do you want for rebuttal? I would like to reserve the remainder of my time. We'll give you 4 minutes instead of 3.54. Thank you. Good morning, Your Honors. May it please the Court? Barrett Volley for the Plaintiffs' Appellee Landowners. I'd like to jump right into the pre-1871 Land-Grant Act's third issue here. It's the first issue that was certified for appeal from Judge Selma's order. Mr. Ballinger suggested that it's clear law that the railroad has a fee interest and can do whatever it wants from the earth to the sky with those right-of-ways under pre-1871 acts. Subject to that, they can't dig for minerals. And they can't dig for minerals. That is incorrect. The Union Pacific Supreme Court case from 1956 holds that a railroad purpose is required. The ETSI cases from the Eighth Circuit— It dealt with the issue of minerals, though, did it not? It was addressing the issue in the context of minerals. Right. Okay. That came up. It was in the Tenth Circuit. It came up through the District Court and the Court of Appeals. And the argument was, do we have to show a railroad purpose? What is the nature of the right-of-way? Every argument I'm making today was an argument that the United States of America made in that case, and they won. The first ruling, if you look at Justice Douglas' opinion of the court, the first issue he addresses is the issue that's here. It's not about mineral law. That's true. It's the first one, and he doesn't make it tentative. He rules that it requires a railroad purpose. All right, so let's assume that it requires a railroad purpose. Your position is that there's no railroad purpose to be served by these pipelines? Absolutely. Absolutely, that's the position. If we go to that, if we get to that second question, which would apply to all. They have the right to lay pipes here. They can't. It has to be for a railroad purpose. Why would that not be for a railroad purpose? This is a commercial petroleum pipeline. They do not allege, even in the amendment, that they put it there, that they placed it for purposes of servicing the railroad. They do not allege that it's necessary to service the railroad. They have been litigating, Union Pacific has been litigating with Kinder Morgan, the pipeline company, for decades over the rent payments. So this pipeline is a cash cow. I understand that, but you're telling me this is not, the incidental use doctrine doesn't apply at all. I think it's fair to look at the incidental use cases. Now, in this context, I think you must first look at the statutes, and that's the opening of the Union Pacific case. It says look at Section 2 of the statute, and it says we're granting a right of way. We're not granting a fee. We're granting a right of way for purposes of a railroad and telegraph line. So you have to look at that. But it's pretty clear from various cases that the incidental use doctrine does apply, so you can build along the train tracks, train depots and gas stations, communication lines. So what's the difference between that and building a pipeline in order to bring the fuel that's necessary to run the trains? So to a couple of those specific examples, depots. The necessary grounds for depots, turnout stations, things like that, they were specifically granted in the statutes. That's in there. Water lines, if you need a water line to power your train, I think you can probably have one. So you can bring water to service the trains but not fuel? I am not making the argument that a railroad could not use a dedicated line to serve its trains with fuel. That is not what we have here, and that's why Judge Selma said what we have here is a commercial line. But those other incidental use cases all deal with commercial third-party rights. The courts don't make any distinction. The Supreme Court hasn't drawn a distinction between that. It makes no difference at all to the surrounding landowners here. It's an irrelevancy. In most of those cases, it is primarily benefiting the railroad. That's why it's there. So those warehouses and the like, they're made for freighting. That's what they are for. In the Grand Trunk case, the court's concern, and that's a case that's been briefed by my opponents, the court's concern in Grand Trunk, it gives this example, we do not want to cause a grain handler who has an elevator, who handles grain on and off of the train, to lose his right to operate because he sells a load of grain on the spot market. And that's not what I'm arguing. The incidental rights cases are fine so far as they go, but we have to look at the statutes. And I think we should keep in mind. What is the statute from command, the concept of the incidental use of the property for railroad purposes? Where do you draw that from, the statute? The question is, is it for the construction and operation of a railroad and telegraph line? I'm not saying that you cannot apply incidental use, period. In fact, many of the incidental use cases are quite good for my position. We cited the Sparrow case, the Disroon case, and in those cases it talks about the primary purpose. The primary purpose is for railroading. And the ancillary use, ancillary means something that is subservient to, in addition to, might be for something else. Those cases, those uses are about railroading. This use is not. And they have not and they cannot allege that the primary purpose of this is for the railroad. Where do you get the language that has to be a primary purpose? I think that's part of this exercise is struggling for the test. What is your formulation of the test? Where did you get the limitation that it has to be primarily used to operate the trains in order to fit under the incidental use doctrine? So looking at the state law cases, I get that out of the Sparrow case, where it repeatedly uses those words, the primary purpose. What about any federal case law? Any federal case law? The federal case law doesn't even, it doesn't go this far to answer the question. So Union Pacific addresses this issue, actually, and the Great Northern case addresses this issue. In Great Northern, that is an 1875 Act case, the railroad wanted to build three wells. And this is not a mineral rights case. That's not how this is decided. The court in Great Northern was looking at three wells. One was solely for commercial use. One was mixed and to be refined for diesel fuel for locomotives. One was to be used purely for locomotives. And the court there said, no, you cannot do that because you do not need to extract oil for the purposes of the railroad. That's not a railroad purpose. Let me ask you this question. If it were established factually that the entire pipeline was built exclusively to transport fuel to its trains to serve the trains that were running along the tracks, would you have any problem with that? I think we would have to look at all the facts, but in the abstract, in the abstract, I think there would be a pretty good argument that that was a railroad purpose. Okay, so now if half the tracks were used for that, half the pipeline, would that be different? I think it would be a close call, and we're nowhere near that right now. A quarter of it? Three quarters? Is that the standard we have to employ, the percentage of the usage of the pipeline for railroad purposes? I think at some point on that gradient, there is a jury question, and we have to work out a jury charge on it. But we're not there. I don't know what law you cite to support that thesis. It has to mean something. It has to mean something, and we have multiple Supreme Court decisions, Union Pacific. Well, but at least at this point, it gets them past the counterclaim pleading stage. I disagree. I disagree. They have to show, and that's exactly what the court in the Courts of Appeals of California said, and that's exactly what Judge Selma said. I have a question. Are we talking about a single pipeline here that runs all along the tracks from the beginning to the end? It is a series of tubes, but it's basically a long pipeline. It runs from approximately El Paso, Texas, to Yuma, up through Southern California, up to Eugene, Oregon. And it runs along adjacent to the railroad tracks? Not always contiguously, but there are many areas that are at issue in this case in California that it's along our tracks. Are we really saying that you'd have to decide section by section of that pipeline, or would one decision be uniform for everything? So one decision would be uniform on the first question. Are you talking about, Judge, the railroad purposes question? I don't know what I'm talking about. So for the pre-1871 land grants, the first issue that's raised here, the Supreme Court in Union Pacific has decided that it was pre- and post-1875. Just let me understand this. Are you saying that none of that pipeline is used for railroad purposes, that the trains don't use it at all? Are you willing to concede? Apparently your adversary says that this could be an easy thing to establish. Factually, are you willing to concede that obviously some of that oil is being used to fuel the trains? As relates to the futility argument, I think I have to. As a matter of fact, no, I'm not willing to. But the attempted pleading – And you'd have to say no, that none of it is used for railroad purpose, because otherwise it gets them past the pleading stage, right? I don't think so. There has to be a test. Plausibility has to be a test of something. It can't be a sham. So you know the facts a little bit here. You represent the big railroads and everything else like that, right? I'm sorry, but are you willing to concede at all that some of this fuel is used for the trains? Any knowledge about that at all? I take their representations that that is true. It's not going to be a big shock to you if this goes back to a factual inquiry that a considerable amount of that fuel is used for the trains. It seems logical that it would be. I'm actually excited to have that battle, because I think it's going to strongly favor my side. How? Because this is a purely commercial instrument. I don't think the case at all that I read says it makes a difference whether it's commercial or not. I simply disagree. Well, okay. I simply disagree. And if you look across all of the cases, I do not think it comes out that way. I don't see any case that draws the distinction that you want us to draw, but you can point out if I'm wrong. Well, I've pointed out one. It's an incidental rights case, but the Sparrow case. The test that you're advocating is that it has to be primarily used for the train, to operate the train essentially, and you don't think that they can plead that factual allegation here because you're betting the proof isn't there. It's not. It's not there. It's not in the pleading. It's not in the pleading. Keep in mind, this issue has been, and I think it's appropriate to raise it here, the government briefed here as an amicus. The issue of what is a railroad purpose has changed year by year. In Union Pacific, in the case in 1956, the government was arguing that it was a very narrow concept. It had to be for the railroad. They weren't really looking at ancillary rights, and they won those arguments there. That dealt with exploring the subsurface mineral issue once again. We understand that you can't dig and take out the resources from the earth. That's not what this is all about. This is a pipeline. This is not really an operation to dig for minerals. Fair enough, but I have a hard time seeing the distinction the way that Justice Douglas explained it because what he ruled was, no, this is not a fee. This is not a fee, and that's exactly what the Eighth Circuit has ruled and the Tenth Circuit has ruled. Judge Selma and the California Court of Appeals followed the Eighth and Tenth Circuit on the same issue. They're not allowed to extract minerals from the earth. They're not allowed to do that. The statute says that. The case law says that. All those cases you talk about dealing with that, that's a no-no, but that's different than a pipeline. That's laid across, which has nothing to do with subsurface extraction of minerals. What all the Supreme Court cases say, if you look at them, is that this, you look at the statute first. It says for railroad or pipeline, and that this is a unique bundle of rights that we're talking about. Mr. Ballinger wants to say we're arguing it's only an easement. I'm not. We have never argued that. We just have a hard time because you had earlier indicated that transporting water is okay. So I'm looking at the proposed amended counterclaim, paragraph 16, where it says the pipeline serves a railroad purpose because Union Pacific uses capacity on the pipeline to transport millions of gallons of fuel a year, purchased directly from third-party refineries via dedicated facilities, the private terminals on the railroad line that Union Pacific owns, and it goes on to talk about how it reduces their core railroad operating costs by millions of dollars a year. I have a hard time distinguishing that from transporting water for railroad purposes. I mean, we're talking about just getting past the pleading stage here. So how does the water cases square with these allegations in paragraph 16? The water cases talk about lines that were installed to provide water to steam stations, to water pumps for the railroad. This pipeline was an entirely different thing. It has nothing to do with the railroad. Where does the railroad get its oil from? It goes through another source, I mean, completely? Sure. And it did. Does it use any of the oil that flows through this 1,800 miles of pipeline? Your contention is? That it does not use? Use any of that oil. That is not my contention, and that is not the proposed amendment. But there has to be a test. And what I was just getting to, the new, it was a 28-J letter that was filed, a September 1, 2017 M opinion from the new solicitor. What Union Pacific, and the reason they never tried to plead this as a railroad purpose, was because they don't want that test for anything. They want to be able to do anything they can from the earth to the sky in all of their right-of-way, whether it's pre-1871 or 1875. The government has vacillated in this position over the years. Now, under Secretary Zinke, there is a new, a brand-new M opinion, and it says it doesn't even have a railroad purpose test. It says the rights-of-way granted under the 1875 Act allow companies to lease portions of their easements to third parties without permit or grant from BLM. Here's the test. Provided that such leases are limited to the surface, broadly defined, and when they say that, they mean everything excluding minerals, and do not interfere with the continued use of the railroad. So the railroad can do anything it wants on any right-of-way, so long as it can still operate a railroad. And that's flatly inconsistent with all the case law on the Eighth Circuit, all the case law on the Tenth Circuit, the Union Pacific decision, the California Court of Appeals decision. True. Pre-1875, it can do that. It has the fee subject to reversion if they stop using it for a railroad and they can't dig for minerals. That's what it says. It does not. On pre-1871? Your Honor, respectfully. There's no difference between pre-1871 and post-1871. We just read that completely out of the statute. Not at all. Not at all. There are differences. The Brant case pointed out that there are differences. One of them is that pre-1875 extinguishes upon abandonment. So in that sense, okay, it's not a property right. But on all railroad easements, on all of these statutes, there is something special. They are not just bound by common law. They are not just bound by common law. It's a bundle of rights needed to run a railroad. And there's still, even in pre-1871, there is a servient estate. And someone owns that. It's either a private landowner or it might be the railroad or it might be the government. And that's exactly what the ETSI cases, and I urge the Court to read them closely, in the Eighth Circuit and the Tenth Circuit, they directly control here and they rely on the Union Pacific decision from 1956. And read Justice Frankfurter's dissent in that case. We may not agree with that. That's possible, you know. We may not agree with what you contend is the Eighth and Tenth Circuit reading of the law. We don't necessarily follow blindly. We may agree. We may not agree, right? Absolutely. That is your prerogative. That's why we're here. I will say a careful read of the opinion of the Court in Union Pacific does not allow. Read it five times. We'll see how it comes out of the well, okay? That sounds good, Your Honor. I appreciate that. If I could, with my last minute here, address quickly the collateral estoppel issue. I disagree with Mr. Ballinger. Do we have the option of deciding that or not? The district court reserved its judgment on that. The district court reserved its judgment. Our view is that that is the same issue, right? It would be an imposition of the bar on the same issue that was litigated between Kinder Morgan, the pipeline company, and Union Pacific for 250 trial days and multiple rounds of appeal to a final decision in California. Judge Campbell, I have a great amount of respect for Judge Campbell in Arizona. He found that it was not fully litigated. That's why he denied collateral estoppel. I respectfully disagree with him. There is a case out of the Ninth Circuit called ReadyLink that I think is fairly apt. Is the follow-up case that was wrongly decided? Is that your position? It bars defensively. The court's not taking it. It was wrongly decided, then we barred by collateral estoppel for making that determination. Is that your position? My position is that Union Pacific had the opportunity and did fully litigate the exact issue. Remember, this was on the same pipeline. It's not a different pipeline somewhere else. It's the same pipeline. They litigated this issue. They lost its final, and that can be imposed as a bar against them under California law on preclusion and under procedural law in the Ninth Circuit. Argued the incidental use doctrine in that case? They did, absolutely. They argued extensively, and I put all of the briefing in the supplemental excerpt's record in the event the court wished to look at the issue preclusion issue, because it is... Judge Tillman hadn't reached it yet, but it is a legal issue, and it is within the four corners of the issue here. Even if we had decided that it was wrongfully decided, we're still bound by principles of collateral estoppel, that's your thesis, right? I would look at it the other way around, is that you need not address all the issues in this case. You can rule on collateral estoppel. That's really how it works. I'm not sure that we have jurisdiction to take that up at this point. The...? The collateral estoppel issue. I don't know that we have jurisdiction to decide that question. I think you do. I could not find a Ninth Circuit case, but the hearing case from the Ninth Circuit says affirm on any basis in the record, including not reached by the district court. So that's one point. An application in the context of 1292B is a Fifth Circuit case, and I would have to find the citation, but it's in the brief on collateral estoppel, reaching to a related issue in a 1292, even though it wasn't expressly presented in the order. At most, it's optional to us, for us. Correct. I think it's optional, and I think the line of cases from Union Pacific Railroad to the present firmly shows that our position is correct. Judge Sellman was correct on the pre-1871,  but I would urge the court to either affirm the finding on the amended pleading or give us a test, because we know their test is we win no matter what, and that cannot be the test. The cases do not say that. Thank you, Your Honor. Thank you, Kev. Thank you. Just a few things. So it seems on the railroad purpose issues that the crux of the disagreement is that my brother thinks that it has to primarily serve a railroad purpose in order to be permissible in these 1875 Act rights of way, and the law just doesn't support that. The fiber optic cases that have been decided in recent years, that the railroad was only using a small percentage of the fiber capacity there. The Department of Interior says that as long as it furthers a railroad purpose, nothing else is important. And do you think in the Grand Trunk Railway case, for example, that was a private sawmill and a lumberyard. You think that sawmill and lumberyard primarily served railroad purposes? No, they were serving their own commercial customers, but it was enough, the Supreme Court says, that it served the interests of the railroad to have them there because it increased freight along the railroad. Now, on the pre-1871 issues, the plaintiffs urge you to look at the statute. There's an important point that didn't make it into our briefs, and I think the briefs in this case on both sides are comprehensive and very good, but nothing concentrates the mind like preparing for argument. If you look carefully at the Union Pacific case, the core holding of that case is that Section 3 of the 1862 Act, which reserves mineral lands to the United States, has to apply to the right-of-way grant as well as to the checkerboard land grants. That is a holding that the right-of-way is a fee because if it was an easement, you wouldn't need to reserve mineral lands. Look at the 1875 Act. Nothing in the 1875 Act reserves mineral lands to the United States because Congress knew it didn't have to. If you're granting an easement, there's no need for a reservation. A reservation was necessary in the 1862 Act of mineral lands precisely because Congress recognized that it was granting a fee. The whole structure of the Supreme Court's decision in Union Pacific confirms that, and the plaintiff's argument is based on really just a couple of sentences at the beginning of the Union Pacific decision, which could be read to suggest that a railroad purpose is necessary, but this isn't the usual case where you have to struggle with what's dicta and what's holding in a Supreme Court opinion. By the end of the Union Pacific opinion, the Supreme Court has told you very clearly what is the holding of that case. It says, we are not going to go back and reconsider or reexamine all of these cases holding that the railroads got a fee in those rights of way because it's not necessary to our decision. The only issue necessary to resolve the case in front of us is that none of those prior cases gave the railroads mineral rights. That was the sole issue presented. And only three years ago, in the Brant Trust case, the Supreme Court said, quote, this court previously held that the pre-1871 statutes conveyed to the railroads a limited fee made on an implied condition of reverter. That's just three years ago, and it was absolutely crucial to the Supreme Court's holding in the Brant Trust case, which was that the 1875 Act grants easements, but only because the 1875 Act granted a fundamentally different interest in the right of way than the prior statutes did. So it's very important for this court to answer the first question presented and clarify that the state court was wrong and that these pre-1871 statutes granted a fee. May I ask you a question? If we adopted your position, would we be creating a circuit split with the Eighth and Tenth Circuits? Yes, Your Honor. The ETSI cases from the late 1970s and early 1980s were wrong when decided, but they're even more clearly wrong now, and the Supreme Court has told you that in the Brant Trust case. The whole premise of those decisions was that in light of developments in the modern law of easements, it's no longer necessary to draw all these formal distinctions that the courts used to draw between fees and easements and all of that. It's really all basically the same, and it's really all an easement. And the Supreme Court really had that issue three years ago in the Brant Trust case, and it said, no, we indeed previously held that the pre-1871 statutes granted a fee. That's a quote. And we are deciding that the 1875 Act grants granted an easement because the rights are fundamentally different. It's hard to imagine a more clear repudiation of the basic premise of the ETSI decisions than that. And so with respect to the Eighth and the Tenth Circuit, the Supreme Court has just passed them by on that issue. And it's not just that. Those decisions were rendered before the Supreme Court reached a decision, I think, weren't they? Decades before the Supreme Court's decision in Brant Trust. They were also before the Supreme Court's clarification in the Rodriguez case that lower courts are not allowed to anticipate the overruling of Supreme Court precedent. I mean, basically what those ETSI decisions did was say, look, we can see where this is going, and it looks to us like these old limited-fee cases have lost their vitality. The Supreme Court has subsequently said lower courts need to leave to us the prerogative of overruling our own decisions. The ETSI cases... Well, the Supreme Court, unfortunately, gets to make the rules one way or another. On the collateral estoppel issue, this Court, with respect, doesn't have jurisdiction to reach that issue. Of course, the Court has power in an ordinary case to affirm on any ground disclosed by the record. But in the 1292b context specifically, this Court has said several times that both the letter and the spirit of 1292b confine this Court to the issues that were actually resolved in the order that was certified. And here it's even more clear, because 1292b only authorizes review of questions of law. And this collateral estoppel issue is heavy with questions of fact and mixed questions. Judge Campbell, when he engaged with this issue, did a comprehensive survey of what actually happened in the state court litigation and made findings about what was litigated and what was not. This Court is not going to, with no record and no findings to review, conduct its own independent fact-finding and conclude that Judge Campbell is wrong. That would be extraordinary. Court has any questions? Thank you. Both very much. It was a very helpful argument, and we appreciate it. The Court will take the case under submission and adjourn for the day.
judges: Reinhardt, Nguyen, Block